# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| LAYNA LYNN BOSSE,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    CAUSE NO.: 2:18-CV-480-JPK |
| | ) |
| ANDREW M. SAUL,<br>Commissioner of Social<br>Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Layna Lynn Bosse on December 20, 2018, and Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], filed on August 13, 2019. Plaintiff requests that the February 21, 2018 decision of the Administrative Law Judge (ALJ) denying her claim for supplemental security income be reversed and remanded for further proceedings. The Commissioner filed a Memorandum in Support of Commissioner's Decision, and Plaintiff filed a Reply Brief. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On, September 17, 2015, Plaintiff protectively filed an application for supplemental security income. (AR 34, 91, 108).[1] Plaintiff alleged disability beginning on October 31, 2014, due to manic depression, bipolar disorder, anxiety, thyroid condition, degenerative disc disease, bulging disc in back, and arthritis and spurs in back. (AR 34, 81-108). The application was denied initially on November 24, 2015 (AR 81-91), and on reconsideration on April 8, 2016 (AR 92-108),

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

after which a hearing was held before the ALJ on October 23, 2017. (AR 49). On February 21, 2018, the ALJ issued an unfavorable decision, making the following findings:[2]

> 1. The claimant has not engaged in substantial gainful activity since September 17, 2015, the protectively filed application date.
>
> 2. The claimant has the following severe impairments: type I bipolar disorder; generalized anxiety disorder; substance use disorder, in full remission for cocaine, marijuana, and alcohol; obesity; and lumbar spine degenerative disc disease.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. [T]he claimant has the residual functional capacity to lift no more than 20 pounds occasionally with frequent lifting or carrying objects up to 10 pounds; to stand and/or walk for about 6 hours of an 8 hour workday and to sit for about 6 hours of an 8 hour workday. The claimant cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She cannot have exposure to moving mechanical parts or unprotected heights. The claimant can do no more than simple, routine, and repetitive tasks; the claimant should be free of a production rate pace and free of quotas, but should rely more on end of day goals being satisfied; and she should work in a low stress job, defined as not requiring the worker to cope with work-related circumstances that could be dangerous to the worker or others. She can have no interaction with the public, but can have occasional and superficial interaction with coworkers and occasional interaction with supervisors; the claimant should work in a position with no tandem tasks or team work, where one production step is dependent on a prior step.
>
> 5. The claimant has no past relevant work.
>
> 6. The claimant was born [in April] 1968 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was protectively filed.
>
> 7. The claimant has at least a high school education and is able to communicate in English.

---

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 17, 2015, the date the application was protectively filed.

(AR 36-42).

The Appeals Council denied Plaintiff's request for review on November 5, 2018 (AR 1-7), leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g). The parties thereafter filed forms consenting to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. This Court therefore has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether

she is unable to perform past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff raises three challenges to the ALJ's February 2018 decision, each concerning the ALJ's assessment of her mental impairments. She argues the ALJ erred in: (1) failing to follow the required "special technique" when assessing her mental impairments; (2) instead improperly relying on the outdated opinions of non-examining agency psychological consultants in assessing Plaintiff's mental impairments, limitations, and RFC; and (3) also improperly relying on Plaintiff's daily activities to discount her mental limitations. As explained below, the Court agrees that each of these issues requires remand.

### I.     The ALJ's Application of the "Special Technique"

As both sides acknowledge, Social Security regulations require ALJ's to follow what is known as a "special technique" when assessing a claimant's mental impairments in steps two and three of the sequential analysis. (Pl.'s Br. 17, ECF No. 18; D's Mem. 5, ECF No. 25 (citing 20 C.F.R. § 416.920a)). When assessing the severity of a mental impairment in step two, and whether it meets or equals a listed disorder in step three, this special technique requires an ALJ to determine

5

the claimant's degree of limitation in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. 416.920a(c). The ALJ must rate the extent to which a mental impairment interferes with the claimant's ability to function in these areas "independently, appropriately, effectively, and on a sustained basis" using a five-point scale: none, mild, moderate, marked, and extreme. *Id.*[3] Where (as here) an ALJ finds a medically determinable mental impairment that is severe (generally when functional limitations are greater than mild), the ALJ must then determine whether the impairment meets or equals a listed mental disorder by comparing the criteria of the listed disorder to the medical findings regarding the claimant's mental impairment and the degrees of functional limitations it causes. 20 C.F.R. 416.920(d). Plaintiff argues that the ALJ failed to follow this "special technique" when assessing her mental impairments, and that his listing and RFC determinations both erred as a result. (Pl.'s Br. 17-19, ECF No. 18).

The ALJ found Plaintiff has two severe mental impairments (type I bipolar disorder and general anxiety disorder) which required consideration under Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (AR 36-37). Both Listings contain three sets of criteria set out in Paragraphs A, B, and C, and may be satisfied by meeting the requirements of Paragraph A, along with either Paragraph B or Paragraph C (both Listings recite the same criteria in Paragraphs B and C). 20 C.F.R. Pt. 404, Subpt. P, App. 1. Paragraph B of both Listings requires an "extreme" limitation in at least one of the four functional

---

[3] As the ALJ acknowledged, a "marked" limitation means that functioning independently, appropriately, effectively, and on a sustained basis "is seriously limited," whereas an "extreme" limitation connotes "the inability to function independently, appropriately or effectively, and on a sustained basis." (AR 37). *See also Cynthia T. v. Saul*, No. 18 CV 50288, 2020 WL 564223, at *3 n.2 (N.D. Ill. Feb. 5, 2020) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). A "mild" limitation means that such functioning is "slightly" limited, and a moderate limitation is said to fall "between mild and marked." *Stephen A.M. v. Comm'r Soc. Sec.*, No. 19-cv-704, 2020 WL 818875, at *7 (S.D. Ill. Feb. 19, 2020).

areas or a "marked" limitation in at least two areas. *Id*. Here, the ALJ found Plaintiff has moderate limitations in all four areas, and thus, "the 'paragraph B' criteria are not satisfied." (AR 37). As Plaintiff argues, however, the ALJ offered no analysis as to any of the four functional areas. He merely provided "a list of symptoms and a list of activities, and then concluded that [Plaintiff's ] 'mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation." (Pl.'s Br. 19, ECF No. 18 (citing AR 37)). Nor did the ALJ's listing analysis meaningfully address Plaintiff's psychiatric diagnoses or psychotic symptoms, although the record shows she has been involuntarily hospitalized repeatedly for psychiatric issues.[4] Instead, the ALJ noted positive comments in Plaintiff's medical record observing "that the claimant was described as pleasant and cooperative, had appropriate grooming and hygiene, and normal mood and affect." (AR 37, citing AR 536, 540, 569, 676, 746, 780, 792)). Seventh Circuit precedent consistently warns against "cherry-picking" such positive reports that support a non-disability finding "while ignoring contradictory information." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697-98 (7th Cir. 2016) (citing Seventh Circuit decision); *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) ("The ALJ considered only the signs of possible improvements in these notes and ignored the negative findings."). But as importantly, this one-sided analysis shirked the special technique's explicit requirement to address the medical findings regarding Plaintiff's mental impairments and her degree of limitation in each of the four functional areas when determining whether those impairments meet or equal a listed disorder. 20 C.F.R. § 416.920a(b) – (d); *see also Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008) (discussing requirements of special technique).

---

[4] As discussed in greater detail below, Plaintiff was involuntarily hospitalized for psychiatric issues twice in March 2015, and then again from June 8 to July 15, 2015, when she was diagnosed with schizoaffective disorder, bipolar type, manic with psychotic symptoms, including auditory and visual hallucinations. (AR 442, 445-47). Plaintiff was then involuntarily hospitalized again from February 9 to February 20, 2017, because she was "overtly psychotic and manic," following an admission to a local emergency room where Plaintiff was brought by police because "she was overtly paranoid and agitated and highly functionally impaired." (AR 766).

The Commissioner concedes that "the ALJ did not explicitly go through the four areas of functional limitation" as the special technique requires, but offers two justifications for this failing. First, citing *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013), the Commissioner argues that an ALJ's failure to follow the special technique is harmless where he nevertheless "provided enough information to support his finding" the listing was not met. (D's Mem. 6-7, ECF No. 25). As even the Commissioner acknowledges, however, *Pepper* involved an ALJ's failure to follow the special technique when assessing the severity of the claimant's mental impairment of depression at step two of the sequential analysis, and the Seventh Circuit found the error harmless because substantial evidence supported the ALJ's determination that the impairment was not severe. 712 F.3d at 366. Thus, while the ALJ's application of the special technique was "not a model for compliance," *Pepper* held it inappropriate to remand a case when the record confirms no severe mental impairment and the court is therefore "convinced that the ALJ will reach the same result" if the correct analysis were undertaken. *Id.* at 367. Here, by contrast, the ALJ reasonably concluded that Plaintiff's bipolar and anxiety disorders were both severe impairments, and then failed to address her multiple involuntary hospitalizations with psychotic symptoms or any of the related clinical findings and diagnoses when determining that neither impairment met nor equaled a listing. This Court is simply not convinced that the outcome would have been the same if the ALJ had properly considered such evidence when assessing Plaintiff's limitations in each functional area that the special technique required. The analysis in *Pepper* thus falls far short of demonstrating the harmlessness of the ALJ's failure to adhere to the special technique in this case.

The Commissioner's second defense of this failure is also problematic. While conceding that the ALJ did not himself "go through the four areas of functional limitation," the Commissioner argues that this error was somehow mitigated by the ALJ's reliance on the opinions of the state

agency reviewers at the initial and reexamination levels (Drs. Donna Unversaw and Ann Lovko). (D's Mem. 8, ECF No. 25 (citing AR 41, 84, 99)). As the Commissioner notes, these non-examining opinions considered Plaintiff's limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and found that Plaintiff has mild limitations in the first area and moderate limitations in the latter two. (*Id.*). The Commissioner fails to explain the relevance of these opinions to any application (or non-application) of the special technique in this case, but seems to imply that the ALJ's finding that the Paragraph B criteria were not met is supported by the agency reviewer opinions which also found no marked or extreme limitations in any functional area. But there are several problems with that argument.

For one thing, the ALJ did not rely on the agency reviewer opinions when applying the special technique in steps two or three of the sequential analysis (AR 36-37) and instead considered those opinions in the context of his RFC determination. (AR 41). And as the Seventh Circuit explained in *Craft v. Astrue*, "the RFC analysis is not a substitute for the special technique, even though some of the evidence considered may overlap." 539 F.3d at 675. Moreover, any reliance by the ALJ on the agency reviewer opinions for the special technique or steps two or three of the sequential analysis (determining the severity of Plaintiff's mental impairments and whether they meet or equal a listing) would have been undercut by the ALJ's departure from those opinions insofar as they concluded that Plaintiff's mental impairments are non-severe and that her limitations in activities of daily living are merely mild. (AR 84, 99). Contrary to these conclusions, the ALJ determined that Plaintiff's bipolar and anxiety disorders are both severe impairments (AR 36) and that evidence subsequent to the agency reviewer opinions required a finding of moderate limitations in all Paragraph B criteria, including the criterion relating to Plaintiff's activities of daily living (adapting or managing oneself). (AR 41). And finally, the subsequent

evidence referenced by the ALJ raises a wholly independent obstacle to any reliance on the agency reviewer opinions for purposes of the special technique or any other issue. As Plaintiff argues (Pl.'s Brief 13-16, ECF No, 18), ALJ's "should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). The Court must therefore consider whether the ALJ appropriately relied on the agency reviewer opinions for any purpose, given later evidence regarding Plaintiff's mental impairments which the reviewers had never seen. The Court now turns to that separate issue.

## II.     The Agency Reviewer Opinions

Wholly apart from the failure to follow the special technique when assessing Plaintiff's mental impairments, Plaintiff further challenges the ALJ's reliance on the opinions of the non-examining psychological consultants who reviewed her application initially (Dr. Unversaw) and on reconsideration (Dr. Lovko). (AR 85-90, 100-05). The ALJ purportedly gave "great weight" to these opinions, noting that agency psychological consultants "are highly qualified doctors, skilled in the evaluation of the medical issues in disability claims under the Act." (AR 41). The decision relied specifically on the agency reviewer opinions that Plaintiff has "moderate difficulties in maintaining social functioning and concentration, persistence, or pace" (AR 84, 99); that she "does not meet the 'paragraph C' criteria" of Listings 12.04 and 12.06 (AR 84, 99); and that she "could perform light exertional work with some postural and mental limitations." (AR 89-90, 104-06). But as noted above, despite the "great weight" the ALJ nominally accorded these opinions, he disagreed with both reviewers' conclusions that Plaintiff's mental impairments are non-severe, and then found moderate limitations in all Paragraph B criteria despite the agency reviewer opinions that Plaintiff's limitations in activities of daily living are merely mild. (AR 36, 41).

Plaintiff acknowledges the ALJ's disagreement with Drs. Unversaw and Lovko on these issues, but argues that it fell short. Plaintiff contends that both reviewers lacked "significant and new developments" in her medical record which left *all* of their opinions "outdated and stale," and in turn rendered the ALJ's partial reliance on those opinions improper. (Pl.'s Brief 13-16, ECF No, 18 (citing *Moreno*, 882 F.3d at 728). Specifically, Plaintiff asserts that Dr. Unversaw's November 2015 opinions on the initial review of Plaintiff's application lacked the benefit of later-obtained records from her treating psychiatrist, Dr. Nitin V. Sheth, and Mount Nittany Medical Center in Pennsylvania, where Plaintiff was involuntarily hospitalized for psychiatric issues from June 8 to July 15, 2015. (Pl.'s Br. 14, ECF No. 18 (citing AR 442, 445-47). As Plaintiff notes, these records include a diagnosis of schizoaffective disorder, bipolar type, manic with psychotic symptoms (AR 445) and refer to two other involuntary hospitalizations, one at a different hospital the week before and another at Mount Nittany in March 2015. (AR 446-47). The records from this third hospitalization in June 2015 also document Plaintiff's psychotic symptoms, including "both auditory and visual hallucinations," and her need for "inpatient treatment due to the severity of her schizoaffective disorder currently manic, and inability to remain safe outside of the hospital." (AR 443-45: "She admits she had visual hallucinations of Jesus and the devil," and "there were clear examples of talking to people who were not in the room and seeing wires coming out of people's heads"). Without the benefit of this information, Dr. Unversaw offered a starkly contrary opinion in November 2015 that Plaintiff's affective disorders were non-severe, that she "has been stable" with no episodes of decompensation and no hallucinations, and that her "thinking is logical, and thought content appears appropriate." (AR 84-85).

Unlike Dr. Unversaw, Dr. Lovko had the records relating to Plaintiff's 2015 hospitalizations when she issued her opinions on the reconsideration of Plaintiff's application in

April 2016. But while Dr. Lovko acknowledged "one or two" episodes of decompensation and "a period of 1-2 months where [Plaintiff] had significant difficulties," she noted that Plaintiff had been "generally stable since that time." (AR 99, 105). Based on that observation and without ever examining her, Dr. Lovko opined that Plaintiff had a history of psychotic symptoms "but none currently," that she was functioning "well at home," and that her "substance abuse" was in "remission." (AR 104-05). But as Plaintiff notes, these opinions came ten months before she was again involuntarily hospitalized from February 9 to February 20, 2017, because she was "overtly psychotic and manic." (Pl.'s Br. 15, ECF No. 18 (citing AR 766)). This hospitalization followed an admission to a local emergency room where Plaintiff was brought by police because "she was overtly paranoid and agitated and highly functionally impaired." (AR 766). And when Plaintiff was released on February 20, 2017, she was diagnosed with Bipolar Affective Disorder, Manic, Severe with Psychosis, and Polysubstance Use Disorder, Amphetamines and Opioids, in addition to certain physical impairments (arthritis, lumbar disc disease, and hypothyroidism). (AR 819).

The Commissioner rightly acknowledges that Dr. Lovko's April 2016 opinions preceded Plaintiff's February 2017 hospitalization and other mental health records regarding her treatment from June 2016 to May 2017. (D's Mem. 14, ECF No. 25). The Commissioner also does not dispute that Dr. Unversaw lacked these same records and those relating to Plaintiff's mid-2015 hospitalizations, and that Dr. Unversaw's November 2015 finding that Plaintiff had no extended periods of decompensation requiring hospitalization was thus incorrect. (*Id*. at 13-14 and n.4). But the agency reviewers' inability to consider these records is "harmless," the Commissioner argues, because Dr. Lovko "had access to most of this evidence," and the ALJ independently considered the year of records that Dr. Lovko did not have, including those relating to Plaintiff's February 2017 involuntary hospitalization. (*Id*.). Once again, both retorts are insufficient.

As even the Commissioner recognizes, the Seventh Circuit's decision in *Moreno* teaches that the ALJ should not have relied on Dr. Unversaw's or Dr. Lovko's opinions (much less place "great weight" on those opinions) if later evidence "reasonably could have changed" their assessments. (D's Mem. 12, ECF No. 25 (citing *Moreno*, 882 F.3d 722)). And it is eminently reasonable to conclude that a year's worth of mental health records documenting an involuntary psychiatric hospitalization could have changed Dr. Lovko's assessment, when she expressly relied on the absence of such an event in forming her opinions that Plaintiff had no current psychotic symptoms, was functioning well at home, and that her mental health impairments were not severe. (AR 99, 104-05). Likewise, it is all the more reasonable to conclude that two years' worth of mental health records documenting several involuntary hospitalizations could have changed Dr. Unversaw's similar opinion that Plaintiff's mental impairments were not severe, given her mistaken belief that Plaintiff had not been hospitalized at all. (AR 84). Indeed, the ALJ's decision tacitly acknowledges as much by finding that Plaintiff's mental impairments are severe (AR 36) and thereby rejecting the agency reviewers' contrary opinions (AR 84, 99), and by rejecting their conclusions that Plaintiff has only mild limitations in activities of daily living (AR 84, 99) because "evidence subsequent to their evaluations justified a moderate finding" in all "paragraph B" criteria. (AR 41). But these departures were not enough. The ALJ was required to explain why this same "substantive evidence" did not also require discounting other opinions by the agency reviewers, and how those other opinions (on which the ALJ placed "great weight") were "consistent with the record as a whole." (AR 41). Absent such explanation, the ALJ failed to build a logical bridge from the record to his assessment of these opinions.[5]

---

[5] *See Schmidt v. Colvin*¸ 545 Fed. App'x 552, 557 (7th Cir. 2013) (ALJ's decision failed to "construct a logical bridge between the facts in the record and its ultimate conclusions" where it accorded "great weight" to an agency reviewer opinion without explaining "which portions of the record might actually be consistent with [the] opinion" and stating only that the opinion was "well reasoned and consistent with the body of evidence as a whole"; this "boilerplate" was

13

The Commissioner's argument that the ALJ independently considered the evidence that both reviewers lacked fares no better. As an initial matter, the argument is internally inconsistent. On the one hand, the Commissioner argues that the ALJ's failure to follow the special technique when assessing Plaintiff's mental impairments was harmless because his listing determinations were supported by the agency reviewer opinions. (D's Mem. 8, ECF No. 25). But on the other hand, the Commissioner argues that the ALJ's faulty reliance on those opinions was also harmless because he independently considered the evidence that was unavailable to the agency reviewers. (*Id*. at 14-16). In any event, neither argument is persuasive. As the Seventh Circuit explained in *Moreno*, ALJ's should not rely on outdated assessments where (as here) new evidence reasonably could have changed the reviewing physician's opinion, and such faulty reliance is not mitigated by "the ALJ's own assessment of the more recent records" where (as also occurred here) those new records document such serious mental health issues as the psychotic disturbances that caused Plaintiff's repeated involuntary hospitalizations. *See Moreno*, 882 F.3d at 729-30. The Court therefore agrees with Plaintiff that remand is warranted to reconsider the issues for which the ALJ relied on the agency reviewer opinions, specifically: that Plaintiff has only moderate difficulties maintaining social functioning and concentration, persistence, or pace; that the Paragraph C criteria were not met; and Plaintiff's RFC. (AR 41).

### III. Plaintiff's Daily Activities

Finally, Plaintiff challenges the ALJ's reliance on her daily activities to conclude that her limitations in the four functional areas addressed by the special technique are at worst moderate and that she is capable of full-time work. (Pl.'s Br. 20-23, ECF No. 18). Plaintiff argues the ALJ improperly relied on a "recitation of some simple, limited tasks" that she and her mother admitted

---

"entirely unhelpful" and "made even more so by the fact that" the ALJ's RFC determination contradicted the agency reviewer's opinion in certain respects).

Plaintiff can perform, without considering the assistance she requires with them or explaining how they indicate an ability to work a forty-hour week. (*Id*.). For instance, while the ALJ correctly observed that Plaintiff can prepare meals (AR 37), she argues the ALJ overlooked the facts that she does so only once or twice a week using a microwave and with her mother's help. (Pl.'s Br. 21, ECF No. 18 (citing AR 245)). And while the ALJ accurately noted that Plaintiff is able to handle her own self-care and personal hygiene (AR 37), she argues the ALJ disregarded reports that she needs reminders to bathe or shower and do her laundry. (Pl.'s Br. 21, ECF No. 18 (citing 245, 265, 275)). And while the ALJ fairly noted reports that Plaintiff is able to engage in some social and leisure activities (AR 37), she argues the ALJ failed to consider indications in the same reports that she has limited social contact, needs to be accompanied by others to go out in public, and suffers panic attacks. (Pl.'s Br. 21, ECF No. 18 (citing AR 247-48, 267-68, 277-78)).

The Commissioner addresses these arguments in a footnote which reminds the Court that "an ALJ is permitted to use reported activities of daily living to evaluate disability." (D's Mem. 7 n.3, ECF No. 25). True enough. But in doing so, an ALJ must also consider any difficulties in performing such activities and any assistance required with them. *See Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) ("the ALJ relied on Meuser's ability to, for example, do laundry, cook meals, and complete chores, but the ALJ ignored evidence that Meuser gets help with the laundry from his parents when they retrieve the clothes he leaves in the dryer, that the meals he cooks are simple and prepackaged, and that he rarely leaves the house"). An ALJ must also explain how the activities (as so limited) indicate an ability to work full-time. *See id*. ("Meuser, after all, is not claiming that he is disabled by physical limitations, so the proper focus–ignored by the ALJ–is the effect of Meuser's schizophrenia on his mental functioning, including his abilities to concentrate, perform work tasks without constant supervision, maintain a consistent pace, and work around and

with other persons. Whether or not he can pop a frozen dinner into the microwave or occasionally clean the litterbox is irrelevant."). So here, for example, the ALJ should have taken into account the portions of the same function reports on which he relied that indicated Plaintiff needs her mother's help to prepare meals, requires reminders to bathe or shower, and has limited social contacts (AR 247-48, 265-68, 275-78), and then explained how that evidence supported the ALJ's conclusions that Plaintiff has only moderate limitations in all Paragraph B criteria and is capable of full-time work. (AR 37, 41).

Accordingly, the Court remands this case for further consideration of Plaintiff's daily activities and a clearer explanation of their relevance to Plaintiff's mental limitations. Additionally, as explained above, remand is required also for further consideration of the criteria in Paragraphs B and C of Listings 12.04 and 12.06 and a redetermination of whether Plaintiff's mental impairments meet or equal any listed disorder, and if not, reconsideration of Plaintiff' mental RFC. As also explained above, these assessments must be made in accordance with the special technique and in light of Plaintiff's full medical record, including the records relating to her more recent hospitalizations, and any new medical opinions evaluating that record that are offered or needed. *See* SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017) ("To assist in evaluating this issue [of whether an impairment meets or medically equals a listing] adjudicators at the hearings level may ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s)."). But none of this is to say that a disability finding or even a different RFC is required on remand. The Court holds only that the ALJ failed to follow the requisite special technique, improperly relied on outdated agency reviewer opinions, and failed to explain the relevance of Plaintiff's daily activities. As a result, the listing analysis and RFC determinations that flowed from those errors must be reconsidered on remand.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 26th day of March, 2020.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT